**June Martha MARTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–83–118 CR.**

Court of Appeals of Texas,
Beaumont.

May 24, 1989.

Discretionary Review Refused
Aug. 30, 1989.

Ronald H. Tonkin, Houston, for appellant.

Peter Speers, III, Thomas D. Glenn, Conroe, for appellee.

OPINION ON REMAND

DIES, Chief Justice.

Appellant was convicted by a jury of the offense of possession of methamphetamine, a controlled substance. The trial court assessed punishment of 15 years and 6 months confinement in the Texas Department of Corrections. This Court reversed appellant's conviction because of the improper admission of $7,000.00 in cash as evidence that appellant was a narcotics dealer. *Martin v. State*, 761 S.W.2d 26 (Tex.App.—Beaumont 1988, pet. granted). Upon the State's petition for discretionary review the Court of Criminal Appeals held that this Court erred in not conducting a harm analysis and remanded the cause to this Court for a determination whether the admission of the evidence was harmful error under *TEX.R.APP.P. 81(b)(2)* [1]. *Martin v. State*, 764 S.W.2d 562 (Tex.Crim.App. 1989).

---

1. The State argued that the error, if any, in admitting the evidence in question was harmless for the first time on motion for rehearing. We refused to consider such argument made for the first time on rehearing. Therefore, we must conclude, since the Court of Criminal Appeals has remanded the case on this issue, that it is now the law of the State of Texas that an appellate court must conduct a harm analysis in every instance in which it finds error in the trial court proceedings, regardless of whether the issue of harmfulness is raised on appeal by any party.

■ Under Rule 81(b)(2) we may only hold that the error was harmless if we find beyond a reasonable doubt that the admission of the money made no contribution to the conviction or the punishment. *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App. 1987) (opinion on rehearing). Since the trial court assessed punishment, it is presumed that he disregarded the inadmissible evidence in reaching that decision. *Tolbert v. State*, 743 S.W.2d 631 (Tex.Crim.App. 1988).

■ In *Tolbert v. State, supra,* the Court of Criminal Appeals held that the appellant "carries the burden of proving that the trial court relied upon or even considered the inadmissible evidence in reaching his verdict or determining punishment." *Id.* at 633. The Court of Criminal Appeals further held that where the record does not reveal "overt reliance" by the trial court upon the inadmissible evidence and the properly admitted evidence is sufficient to sustain the judgment, then the presumption that the trial court disregarded the inadmissible evidence is applicable. *Id.* at 634–35. In the present case the record does not reveal "overt reliance" by the trial court upon the inadmissible evidence. Furthermore, the trial court had "sufficient" admissible evidence before him to justify a sentence of fifteen years and six months confinement. Therefore, under the rules expressed in *Tolbert,* we are compelled to conclude that, as to the punishment assessed by the trial court, the erroneous admission of the money in evidence was harmless beyond a reasonable doubt.

However, we reach this decision with reluctance and some confusion. This is so because the holdings and reasoning in *Tolbert* seems to be vastly different from the approach taken by the Court of Criminal Appeals in reviewing the harmlessness issue where punishment is assessed by a jury. *See Rose v. State,* 752 S.W.2d at 552.

In *Rose,* at 554, the error in the punishment phase of the jury trial was held harmless where an admonitory instruction raised a presumption that the jury disregarded the statutory parole law instruction. However, the Court of Criminal Appeals did not

state or even imply that under *TEX.R. APP.P. 81(b)(2)* it was proper to hold that such presumption alone was sufficient to hold the error made no contribution to the punishment assessed beyond a reasonable doubt. The Court went on to identify other factors militating in favor of a harsh sentence. *Id.* These factors were the heinous facts surrounding the offense for which the appellant had been convicted and the evidence of his prior convictions. *Id.* It therefore appears that a legal presumption is not, in and of itself, sufficient to hold that a jury verdict was unaffected by punishment phase error. Nevertheless, under *Tolbert, supra,* a legal presumption is sufficient basis upon which to base a finding that, beyond a reasonable doubt, the trial judge did not rely upon inadmissible evidence in reaching a decision on punishment.

Though the Court of Criminal Appeals did not mention Rule 81(b)(2) in its opinion in *Tolbert,* we presume that the Court did apply the rule it devised and promulgated. Therefore, we follow the strictures of *Tolbert* in analyzing the question of harmlessness under Rule 81(b)(2) in the present case. We hold that the error made no contribution, beyond a reasonable doubt, to appellant's punishment. Were we to conclude that the method of analyzing harm as regards punishment which was set out in *Rose* was appropriate here, we would reach a different decision.

Appellant was over 50 years old at the time of the alleged offense. The evidence showed that the methamphetamine in her purse amounted to approximately 50 grams. There was no evidence that appellant had previously been convicted of so much as a traffic offense. There was no evidence that she had a bad reputation in the community. Nevertheless, the trial court sentenced her to 15½ years in prison. It appears that the only factor arguably militating in favor of harsh punishment was the amount of methamphetamine found in appellant's purse. There was no evidence whether this is a particularly large amount of methamphetamine for a person to possess at one time or not. Therefore, under a *Rose* analysis, we would

be unable to find, beyond a reasonable doubt, that the trial court had disregarded the inadmissible evidence and the inferences that could be drawn therefrom in assessing punishment.

The State characterizes the admissible evidence of appellant's guilt as overwhelming. Police found methamphetamine in appellant's purse which was lying next to her on a couch when plainclothes officers entered her son-in-law's house. One officer testified that appellant grabbed the purse and clutched it in her lap, as if to hide something, when he announced that he was going to search the women's purses for weapons. Another officer testified that appellant grabbed the purse and clutched it in her lap when he entered the house in plain clothes, drew his pistol, and told everyone present to freeze.

The State had the burden of showing that appellant knew that the substance in her purse was contraband. *Payne v. State*, 480 S.W.2d 732, 734 (Tex.Crim.App. 1972). While appellant's furtive gesture would justify an inference that she knew that her purse contained contraband, evidence of such gesture does not seem to compel such an inference. This is especially so in light of the two different versions of the sequence of events leading to appellant's gesture which were related to the jury by the officers. Furthermore, sufficiency of the admissible evidence to sustain a conviction is not the issue. *See Lewis v. State*, 737 S.W.2d 857 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). After thorough review of the record, we cannot find that the erroneous admission of the money in evidence made no contribution to appellant's conviction beyond a reasonable doubt. Therefore, this cause is reversed and remanded to the trial court.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, dissenting.

As I view the record, the admissible evidence in the case, at the guilt stage, against the Appellant was overwhelming. She had more than one packet of the methamphetamine in her purse. This contraband amounted, in weight, to approximately fifty grams. The jury could have properly inferred and held, from that fact, that it was not all for her personal use and, secondly, that she had guilty knowledge of the nature of the contraband.

One officer, upon announcing that he was going to search the purses for weapons—for which he had sound reason—testified that, at that point, the Appellant grabbed her purse and clutched it to her lap and sort of hunkered, or crouched, or slumped, over the purse as if to protect the purse or something in it. In my opinion, this action on the part of the Appellant had probative force to show guilty knowledge of the contraband. Another peace officer stated that the Appellant grabbed the purse and clutched it to her lap when he entered the house and drew his pistol and told everyone present to freeze. Nevertheless, the Appellant did not freeze. In my view, there is a reasonable inference to be drawn from that testimony and the movements and acts of the Appellant.

Therefore, under this record, in my opinion, the State did show that the Appellant knew that the substance in her purse was contraband. The State showed this by her dramatic actions and the certain, reasonable inferences that resulted therefrom.

Under either of the narratives given by the two officers, the Appellant's gestures, movements and posture of protecting and attempting to hide the purse or the contents thereof and the reasonable and logical inferences therefrom, were sufficient to demonstrate that the Appellant knew that the substances, in more than one packet in her purse, were contraband. Because of the valuational characteristics of the evidence in this case, I would find that the admission of the money into evidence made no contribution to the Appellant's conviction of guilt and I would find this beyond a reasonable doubt.

However, I do not agree that the admission of the money into evidence was error. This is especially true in view of the fact that June Martha Martin was tried, along with her husband, in a joint trial. No attempt at severance of her defense had been made.

Since the Court has ordered that the judgment herein be reversed and the cause be remanded to the trial court, I respectfully dissent. See *Martin v. State*, 761 S.W.2d 26 (Tex.App.—Beaumont 1988, pet. granted) (Majority and Dissenting Opinion). *See Martin v. State*, 764 S.W.2d 562 (Tex. Crim.App.1989).

Interesting and significant, as well as crucial, are the following events in the chronology of this venerable criminal litigation:

1. June Martha Martin was indicted on January 28, 1982, with knowingly and intentionally possessing a controlled substance; namely, methamphetamine—the date of the offense being on or about October 25, 1981. The indictment has now been on file for over seven years and three months.

2. The case was tried and went to the jury on January 19, 1983. The jury found her guilty of possession on January 19, 1983.

3. The first opinion, at the intermediate appellate level, was issued May 23, 1984.

4. On May 18, 1988, the Court of Criminal Appeals issued its first opinion reversing the judgment of our Court in June Martha Martin's case and remanded the cause for a consideration of the Appellant's remaining points. That was the first remand. The Court of Criminal Appeals' mandate was issued June 3, 1988. This matter was pending before the Court of Criminal Appeals for about four years.

5. Thereafter, we handed down our opinion on the first remand on September 28, 1988. Thereafter, the Court of Criminal Appeals, again, ordered a second remand on February 10, 1989. On the second remand, the Court of Criminal Appeals directed a harm analysis under *TEX.R.APP.P. 81(b)(2)*, concerning the admission of evidence determined by the Court of Appeals, in its prior decision, to have been erroneously admitted before the jury.

The opinion issued this date is on the second remand to us.

The genesis, or inception, of this criminal proceeding occurred on October 25, 1981. Hence, this matter has been pending approximately seven and one-third years without resolution. With respect, but with fervent zeal, it is requested that the high court conclude this archaic proceeding.